**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

THE METROPOLITAN
TRANSPORTATION AUTHORITY
DEFINED BENEFIT PENSION PLAN
MASTER TRUST, THE MANHATTAN
AND BRONX SURFACE TRANSIT
OPERATING AUTHORITY PENSION
PLAN and THE PLYMOUTH COUNTY
RETIREMENT ASSOCIATION,

     Plaintiffs,

v.                                                              Case No: 8:18-cv-3007-T-30AEP

WELBILT, INC, HUBERTUS M.
MUEHLHAEUSER, JOHN O.
STEWART and HARESH SHAH,

     Defendants.

_____

**<u>ORDER</u>**

Lead Plaintiffs[1] are suing Welbilt, Inc. and several of its former officers for securities fraud under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated under the Exchange Act. In short, Lead Plaintiffs argue Welbilt made misleading statements in its quarterly and annual reports from February 2017 to November 2018 that caused Welbilt's share price to fall 26.19%

---

[1] "Lead Plaintiffs" are, collectively, the Metropolitan Transportation Authority Defined Benefit Pension Plan Master Trust ("MTA Master Trust"), the Manhattan and Bronx Surface Transit Operating Authority Pension Plan ("MaBSTOA Pension Plan") and the Plymouth County Retirement Association ("Plymouth").

when the truth came to light. Welbilt and the Individual Defendants[2] argue the Amended Complaint fails to satisfy the heightened pleading standard under the Private Securities Litigation Reform Act ("PSLRA"), specifically regarding the elements of scienter and loss causation. The Court agrees with Welbilt and concludes the Lead Plaintiffs failed to sufficiently allege scienter. So the Court will dismiss the Amended Complaint without prejudice to Lead Plaintiffs filing an amended complaint that alleges sufficient facts to correct these deficiencies.

## **BACKGROUND**

While Lead Plaintiffs are suing Welbilt, the financial issues giving rise to the claim predate Welbilt's existence by several years. Before Welbilt was incorporated as a separate entity, it was a business arm of The Manitowoc Company, Inc. ("MTW") that specialized in foodservice equipment.

In 2008, MTW bought a foodservice equipment manufacturing company in the United Kingdom, Enodis PLC, for $2.7 billion in cash plus the assumption of $207 million of debt. Without getting too specific, MTW classified a portion of the purchase price of Enodis to goodwill and another portion to intangible assets in MTW's 2008 Annual Report. In 2009, MTW revised its allocations and recognized an impairment charge of $548.8 million related to goodwill. In 2011, MTW revised it prior financial statements due to

---

[2] The "Individual Defendants" are, collectively, Hubertus Muehlhaeuser, John Stewart, and Haresh Shah. Muehlhaeuser was Welbilt's CEO and President from the beginning of the class period to August 31, 2018, when he resigned. Stewart was Welbilt's CFO and Vice President from the beginning of the class period to April 28, 2017, when he resigned. Shah was Welbilt's CFO and Vice President from May 1, 2017, through the end of the class period.

errors in its income tax payable and goodwill accounts related to the 2008 Enodis purchase. In 2012, MTW again disclosed it was revising its prior financial statements related to errors in the tax and goodwill accounts. MTW's foreign subsidiary, Enodis Holdings Limited, filed a report with the United Kingdom's Companies House in 2013 that its impairment reserve was materially overstated and had been since 2009.

In July 2015, MTW incorporated Manitowoc Foodservice, Inc. in anticipation of spinning off its foodservice equipment business. Individual Defendants Hubertus Muehlhaeuser was named President and CEO, and John Stewart was named CFO and Vice President. In March 2016, Manitowoc Foodservice, Inc. became an independent, publicly traded company. In March 2017, Manitowoc Foodservice, Inc. changed its name to Welbilt, Inc.[3]

From the beginning of the class period in February 2017 through the end of the class period on November 2, 2018, Welbilt filed quarterly and annual financial statements with the U.S. Securities and Exchange Commission ("SEC"). Those documents were signed by the Individual Defendants, who certified their accuracy. In those documents, Welbilt disclosed that its CEO and CFO had evaluated the effectiveness of its disclosure controls and procedures, and it reported that such controls and procedures were effective "in recording, processing, summarizing, and reporting" Welbilt's financial condition. Welbilt

---

[3] For purposes of this Order, the Court will refer Manitowoc Foodservice, Inc. as "Welbilt" even for the time period before it officially changed its name.

also disclosed that it was enhancing its systems and expanding its accounting, reporting, and auditing departments. Lead Plaintiffs claim these were material misstatements.

On November 5, 2018, Welbilt filed a Form 8-K announcing that Welbilt's financial statements for 2016 should no longer be relied upon because of prior period errors. The errors related to (1) a U.S. tax election made in connection with the 2008 purchase of Enodis and (2) intercompany transactions that were not timely reported, both of which resulted in an understatement of the U.S. tax liability. Welbilt also determined there was a material weakness related to income taxes that existed as of December 31, 2017, and continued through September 30, 2018.

Also on November 5, 2018, Welbilt's stock price declined 26.19%, which Lead Plaintiffs argue was because of the Form 8-K filing. Welbilt, though, notes it also announced financial results that fell short of analyst expectations and lowered its anticipated earnings per share based on updated financial guidance for 2018.

Subsequently, Welbilt issued more disclosures related to errors in prior reporting period financial statements. These included additional tax errors and issues with another recently-acquired company from outside the United States. As its investigation continued, Welbilt concluded that its controls were defective as of December 31, 2017.

## A. Scienter Allegations

Lead Plaintiffs make several allegations related to scienter, which they argue show the Individual Defendants "either knew or were deliberately reckless in not knowing" that their representations in the quarterly and annual financial statements were materially false and misleading and would deceive investors into purchasing Welbilt securities at inflated

4

prices. Specifically, Lead Plaintiffs make the following allegations of circumstantial evidence pointing toward the Individual Defendants' scienter:

- The Individual Defendants' specific personal interest as officers of Welbilt;

- The scope and duration of the alleged errors in Welbilt's income tax accounting controls;

- The fact and amount of the restatement of Welbilt's financial results, and the discrete nature of the accounting errors;

- The timing and method of discovering the internal control deficiencies;

- The contemporaneous resignations of the Individual Defendants;

- The financial statement certifications by the Individual Defendants; and

- The continued remediation efforts.

(Docs. 53 and 73).

## **DISCUSSION**

To state a claim for securities fraud under § 10(b) of the Exchange Act and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236–37 (11th Cir. 2008).

To survive a motion to dismiss, a securities fraud claim must satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)(2), the heightened pleading standard for fraud under Rule 9(b), and the additional pleading requirements of the PSLRA. *In re*

*Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016). The Eleventh

Circuit has explained this trio of pleading requirements as follows:

> Under Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must allege "enough facts to state a claim to relief that is plausible on its face," and the factual allegations "must be enough to raise a right to relief above the speculative level."

> In addition to the Rule 8(a)(2) requirements, Rule 9(b) requires that, for complaints alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." While Rule 9(b) does not abrogate the concept of notice pleading, it plainly requires a complaint to set forth: (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud. The "[f]ailure to satisfy Rule 9(b) is a ground for dismissal of a complaint."

> The PSLRA imposes additional heightened pleading requirements for Rule 10b-5(b) actions. For Rule 10b-5(b) claims predicated on allegedly false or misleading statements or omissions, the PSLRA provides that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). And for all private Rule 10b-5(b) actions requiring proof of scienter, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind [i.e., scienter]." *Id.*, § 78u–4(b)(2). Although factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute. If these PSLRA pleading requirements are not satisfied, the court "shall" dismiss the complaint. 15 U.S.C. § 78u–4(b)(3)(A).

*Id.* at 1269–70 (internal citations omitted).

6

Defendants argue the Amended Complaint should be dismissed because Lead Plaintiffs failed to plead scienter or loss causation, the second and sixth elements of a securities fraud claim, with the particularity described above. The Court agrees that scienter was not adequately pled but concludes the Amended Complaint alleges loss causation.

## A. Scienter

A plaintiff pleading scienter must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind, meaning the defendant intended to defraud investors or was severely reckless. § 78u–4(b)(2)(A). A strong inference of scienter "must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 127 S. Ct. 2499, 2510, 168 L. Ed. 2d 179 (2007). So when considering whether a complaint alleges a strong inference of scienter, courts must: "(1) accept all factual allegations in the complaint as true, (2) consider the complaint in its entirety and determine whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, and (3) take into account plausible opposing inferences." *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 633–34 (11th Cir. 2010) (internal quotation marks omitted).

Defendants argue Lead Plaintiffs did not adequately plead scienter for three reasons that are inter-related. First, Defendants argue facts omitted from the Amended Complaint and over which the Court can take judicial notice weigh against a strong inference of

7

scienter. Second, Defendants argue Lead Plaintiffs improperly pleaded scienter against the Individual Defendants as a group. Third, Defendants argue the actual allegations do not give rise to a strong inference of scienter. The Court will begin with the "group pleading" argument, before considering whether all the facts collectively give rise to a strong inference of scienter.

The group pleading doctrine "can be broadly characterized as a presumption of group responsibility for statements and omissions in order to satisfy the particularity requirements for pleading fraud under Federal Rule of Civil Procedure 9(b)." *Phillips v. Sci.-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004). Although the Eleventh Circuit has not explicitly decided the issue, some courts within this circuit have concluded the group pleading doctrine does not apply to the PSLRA's scienter requirements. *See In re Health Ins. Innovations Sec. Litig.*, No. 8:17-CV-2186-T-17SPF, 2019 WL 3940842, at *22 n.10 (M.D. Fla. June 28, 2019); and *Richard Thorpe & Darrel Weisheit v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1359 (S.D. Fla. 2015). This Court agrees and concludes that group pleading is inapplicable to the PSLRA's scienter requirements. *See Mizzaro*, 544 F.3d at 1238 ("Moreover, the complaint must allege facts supporting a strong inference of scienter '*for each defendant* with respect to each violation.'") (emphasis added).

Considering the scienter allegations, the Court concludes Lead Plaintiffs failed to plead scienter as to each Individual Defendant. While Lead Plaintiffs identified the specific financial statement signed by each Individual Defendant and the alleged misrepresentation within the financial statement, that is not enough since it alleges neither an intent to deceive or severe recklessness. At best, the Amended Complaint only alleges scienter for the

8

position of Welbilt's CEO and CFO generally, which is insufficient to give rise to a strong inference of scienter as explained below. So because the Amended Complaint is devoid of facts giving rise to a strong inference of scienter for each Individual Defendant, the Court concludes the Amended Complaint must be dismissed.

Next, Defendants argue that all the allegations of scienter—taken collectively or individually—fail to give rise to a strong inference of scienter compared to the other inferences that may be drawn from the allegations and other facts Lead Plaintiffs omitted. The Court agrees.

First, the Court concludes the mere fact that the Individual Defendants were officers of Welbilt who signed the financial statement certifications and who were responsible for establishing and maintaining adequate internal controls over financial reporting fails to give rise to a strong inference of scienter. That a defendant held a senior officer position alone does not give rise to a strong inference of scienter. *See Brophy v. Jiangbo Pharm., Inc.*, 781 F.3d 1296, 1304 (11th Cir. 2015); *see also In re Smith Gardner Sec. Litig.*, 214 F. Supp. 2d 1291, 1303 (S.D. Fla. 2002) ("Mere allegations that Defendants held senior management positions, had access to inside information, and therefore must have known of the falsity of certain statements is insufficient to plead scienter."). Nor does a strong inference of scienter arise simply because a CEO or CFO certified financial statements since they are required to do so under the Sarbanes–Oxley Act, 18 U.S.C. § 1350(a). *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1266 (11th Cir. 2006) ("Instead, we hold that a Sarbanes–Oxley certification is only probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements.

This requirement is satisfied if the person signing the certification had reason to know, or should have suspected, due to the presence of glaring accounting irregularities or other 'red flags,' that the financial statements contained material misstatements or omissions.). If simply being CEO/CFO and signing the Sarbanes-Oxley certifications were sufficient, "scienter would be established in every case where there was an accounting error or auditing mistake made by a publicly traded company, thereby eviscerating the pleading requirements for scienter set forth in the PSLRA." *Id.* So these allegations fail to give rise to a strong inference of scienter absent allegations of "red flags," which are lacking.

Several of Lead Plaintiffs scienter allegations attempt to allege "red flags," specifically the allegations referring to (1) the scope and duration of the errors in Welbilt's income tax accounting controls; (2) the fact and amount of the restatement, as well as the discrete nature of the accounting errors; and (3) the timing and method of discovering the accounting errors. But as explained below, the allegations do not give rise to a strong inference of scienter.

As outlined above, the tax errors central to Lead Plaintiffs' claims were inherited by Welbilt from MTW. MTW purchased Enodis in 2008—eight years before Welbilt was incorporated—and MTW or its subsidiaries had to issue restatements at least four times to correct accounting errors related to that purchase. That MTW had these errors years before Welbilt's incorporation is insufficient on its own to make the MTW restatements a "red flag" that should have caused the Individual Defendants to suspect there were material misstatements or omissions in their financial statements. *Chiarenza v. IBSG Int'l, Inc.*, No. 09-22736-CIV, 2010 WL 3463304, at *5 (S.D. Fla. Sept. 2, 2010) ("Knowledge of this

past problem, on its own…, is not enough to establish scienter."). The Amended Complaint lacks any factual allegations that the Individual Defendants should have suspected MTW did not correct the tax errors related to the purchase of Enodis, as well as correct the internal controls and procedures that were in place and caused such errors.

That Welbilt issued a restatement when it discovered the errors is also insufficient to give rise to a strong inference of scienter. "[C]ourts have routinely held that a restatement in and of itself is not sufficient to establish scienter." *Climo v. Office Depot, Inc.*, No. 11-80364-CIV, 2012 WL 13018593, at *6 (S.D. Fla. May 24, 2012) (collecting cases); *see also Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1272 (M.D. Fla. 2009), *aff'd,* 594 F.3d 783 (11th Cir. 2010) ("The restatement provides no inference of scienter, and certainly provides no cogent and compelling inference."). The strongest inference from Welbilt issuing a restatement after discovering the errors is that Welbilt was pursuing the truth—not attempting to deceive investors. *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 758 (7th Cir. 2007).

The timing and method of discovery also do not give rise to a strong inference of scienter. The errors in Welbilt's internal procedures were discovered after CEO Muehlhaeuser resigned on August 31, 2018, and were announced on November 5, 2018. Lead Plaintiffs argue the fact that the accounting errors was discovered in the roughly two-month period after Muehlhaeuser resigned gives rise to a strong inference of scienter.

While the Court agrees these facts could give rise to a strong inference of scienter for Muehlhaeuser, they fail to do so considering the facts holistically. The inference drawn from these facts is either (1) that Muehlhaeuser was intentionally deceiving investors by

11

covering up the errors or (2) that the errors were easily capable of discovery, so Muehlhaeuser must have been severely reckless in not discovering them. But these inferences suffer from hindsight bias and are not supported when considering the facts collectively. *In re Biogen Inc. Sec. Litig.*, 857 F.3d 34, 44 (1st Cir. 2017) ("Fraud by hindsight refers to allegations that assert no more than that because something eventually went wrong, defendants must have known about the problem earlier."); *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 434 (S.D.N.Y. 2014) ("To the extent that Plaintiffs argue that new management quickly unearthed the fraud, and thus it was easily discoverable, this argument suffers from hindsight bias.").

There are no facts alleged supporting the inference that Muehlhaeuser acted intentionally to cover up the errors, such as allegations that he personally profited from the inflated prices of the shares by trading them during the class period. *See Mizzaro*, 544 F.3d at 1253 ("Stock sales or purchases timed to maximize returns on nonpublic information weigh in favor of inferring scienter; the lack of similar sales weighs against inferring scienter."). There are also no facts supporting the inference that the error was easily capable of discovery. Rather, the facts indicate the accounting error was not easily discoverable since it went uncovered for years (even before Welbilt was incorporated) and the errors were so complex it has taken Welbilt more than a year to unravel the errors and put new procedures in place. Considering the facts collectively, the Court concludes it is more likely that the Individual Defendants did not discover the errors because of their complexity— not because they intentionally covered up the errors or were severely reckless.

In sum, the Court concludes the Amended Complaint fails to allege scienter for two reasons. First, the Amended Complaint fails to allege facts specific to each Individual Defendant, instead relying on group pleading or pleading facts related to the Individual Defendants' positions at Welbilt. Second, considering the facts collectively, the Court concludes the allegations do not give rise to a strong inference that the Individual Defendants intended to defraud investors or were severely reckless because the inferences drawn from the facts are not at least as cogent and compelling as any opposing inference one could draw from the facts.[4]

## B. Loss Causation

Loss causation in a § 10(b) and Rule 10b-5 claim requires a plaintiff to plead "proof of a causal connection between the misrepresentation and the investment's subsequent decline in value." *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441, 1448 (11th Cir. 1997). "The loss causation element of a Rule 10b–5 claim requires that the defendant's fraud be both the but-for and proximate cause of the plaintiff's later losses." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1309 (11th Cir. 2011). To adequately plead loss causation, a "plaintiff need not show that the defendant's misconduct was the 'sole and exclusive cause' of his injury; he need only show that the defendant's act was a 'substantial' or 'significant contributing cause.'" *Id.* Loss causation is not subject to the PSLRA's

---

[4] Because the Court concludes Lead Plaintiffs' § 10(b) claim was not adequately pleaded, the § 20(a) derivative claim must also be dismissed. *Thompson*, 610 F.3d at 635–36 ("Because a primary violation of the securities law is an essential element of a § 20(a) derivative claim, a plaintiff who pleads a § 20(a) claim can withstand a motion to dismiss only if the primary violation is pleaded with legal sufficiency.").

13

heightened pleading standard. *In re Teco Energy, Inc. Sec. Litig.*, No. 804CV-1948T-27EAJ, 2006 WL 2884960, at \*5 (M.D. Fla. Oct. 10, 2006).

Plaintiffs in a fraud-on-the-market case such as this, typically demonstrate loss causation circumstantially by:

> (1) identifying a "corrective disclosure" (a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company's fraud); (2) showing that the stock price dropped soon after the corrective disclosure; and (3) eliminating other possible explanations for this price drop, so that the factfinder can infer that it is more probable than not that it was the corrective disclosure—as opposed to other possible depressive factors—that caused at least a "substantial" amount of the price drop.

*Id.* at 1311–12.

Defendants argue Lead Plaintiffs failed to adequately plead loss causation because they failed to disaggregate other potential causes for the drop in stock value. Specifically, on the same day the errors were disclosed, Welbilt released financial results that fell short of expectations and lowered expectations for future performance. The Court disagrees.

Lead Plaintiffs allege the stock price dropped 26.19% the day Welbilt disclosed the errors. (Doc. 53, ¶ 80). Lead Plaintiffs also alleged that William Blair & Company published a report that identified the disclosure as one of the reasons that "caused the stock to melt down." (Doc. 53, ¶ 86). Although the Amended Complaint fails to address the financial earnings report and lowered expectations for future earnings, it sufficiently alleges that the disclosure was a substantial or significant contributing cause of the drop in Welbilt's stock price.

The cases cited by Defendant do not hold otherwise. The cases on which Defendants rely suggest Lead Plaintiffs should have disaggregated other causes of loss or at least "apportion[ed] the losses between the [factors] that ultimately destroyed an investment." *Waterford Twp. Gen. Employees Ret. Sys., Individually & on Behalf of All Others Similarly Situated v. Suntrust Banks, Inc.*, No. 109-CV-617-TWT, 2010 WL 3368922, at *4 (N.D. Ga. Aug. 19, 2010); *see also City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 85 (S.D.N.Y. 2015) ("To survive a motion to dismiss under the Exchange Act, then, a plaintiff must 'disaggregate those losses caused by the [unrelated events] from disclosures of the truth behind the alleged misstatements.'"). But those cases dealt with factors completely external to the defendant companies, such as when the S&P downgraded the credit rating of the United States for the first time in history or when a financial crisis caused stock prices to drop for an entire industry. *Id.* At the pleading stage, it may be impossible for Lead Plaintiffs apportion the drop in Welbilt's stock between the disclosure, the earnings report, and the lowered earnings expectations.[5] So it is sufficient that Lead Plaintiffs alleged that the disclosure was one factor considered to have negatively affected Welbilt's stock price.

Accordingly, it is ORDERED AND ADJUDGED that:

1.     Defendants Welbilt, Inc., Hubertus Muelhaeuser, John Stewart, and Haresh Shah's Motion to Dismiss Amended Class Action Complaint (Doc. 63) is GRANTED.

---

[5] If the Court were to accept Defendants' position, companies could insulate themselves from securities fraud claims by timing the release of disclosures like those issued by Welbilt to coincide with negative financial reports, thus preventing a plaintiff from ever alleging loss causation.

2.      The Amended Complaint (Doc. 53) is DISMISSED WITHOUT PREJUDICE.

3.      Lead Plaintiffs shall file an amended complaint within fourteen (14) days from the date of this Order. Failure to do so will result in the Court closing this case without further notice.

**DONE** and **ORDERED** in Tampa, Florida, this 6th day of February, 2020.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

16